IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

UNITED STATES OF AMERICA

v.	CRIMINAL ACTION NO. 3:17-00184

MALCOLM HODGES

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant's Motion to Suppress All Fruits of September 6, 2016, Search Warrant ("Motion to Suppress") (ECF No. 32). Defendant, who is charged with two counts of violating 18 U.S.C. §§ 922(g)(1) and 924(a)(2), challenges the search of his residence that occurred five days after he allegedly fled from the scene of a traffic checkpoint. As explained below, the Court **DENIES** Defendant's Motion to Suppress.

**I. BACKGROUND**

On September 1, 2016, the West Virginia State Police ("WVSP") conducted a DUI checkpoint on Route 34, near the intersection of Carriage Way, in Teays Valley, Putnam County, West Virginia. *Def.'s Mot. to Suppress*, ECF No. 32, at 1; *Gov.'s Resp.*, ECF No. 41, at 1. At roughly 10:00 pm, a late 2000's model Ford Focus approached the checkpoint. *Id.* An WVSP officer, First Sergeant J.T. Findley, approached the Ford, which had stopped at the checkpoint. *Id.* Nearing the car, Sergeant Findley smelled marijuana emanating from the vehicle. *Id.*; *Gov.'s Suppl. Br.*, ECF No. 47, at 1. Sergeant Findley questioned the driver about the smell. In response to the questioning, the driver of the Ford handed over a small bag with a nominal amount marijuana and a pharmaceutical pill inside. *Id.*; *Def.'s Suppl. Br.*, ECF No. 52, at 3. During the conversation between the two, the driver told Sergeant Findley that the contents of the baggie were "all [he

had]." *Ex. A to Def.'s Mot. to Suppress*, ECF No. 32-1, at 4. Sergeant Findley instructed the driver to pull over into a designated processing area. *Id.* In spite this instruction, the driver instead accelerated through and past the checkpoint. *Id.*

Simultaneously, a different WVSP officer, Senior Trooper C.J. Eastridge, heard a car exit the checkpoint rapidly while an officer yelled at the car to stop. *Id.* Trooper Eastridge saw the late 2000's model black Ford Focus speed away from the checkpoint, and take a left onto Lake Chadesa Drive, a short distance away. *Id.* Trooper Eastridge followed the Ford's path, turning left down Lake Chadesa Drive, arriving at an apartment complex located on the road. *Id.* He found the black Ford Focus, but it was unoccupied, still running, with the driver's door ajar. *Id.*

Although he could not locate an individual in or around the car, Trooper Eastridge found a Smith and Wesson revolver with four chambered rounds on the ground near the driver's side door of the Ford. *Id.* Inside the car, Trooper Eastridge found a multiplicity of personal, identifying documents. He found documents and mail addressed to, and regarding, Mr. Malcolm Hodges ("Defendant" or "Mr. Hodges"), including those from a banking institution and a health insurance company. *Id.* Trooper Eastridge also found probation documents for Mr. Hodges concerning a possession of marijuana citation from April of 2016. *Id.* Finally, in the vehicle, Trooper Eastridge also located a West Virginia identification card for Mr. Hodges. *Id.*

The identifying documents were not the only relevant items found in the Ford Focus. Trooper Eastridge discovered several items that he believed were consistent with drug possession and/or distribution, including a box of unused small plastic baggies, a scale, and several "blunt wraps." *Id.*

Having left the DUI checkpoint to assist Trooper Eastridge, Sergeant Findley arrived at the site of the still running, deserted late 2000's black Ford Focus. *Id.* Sergeant Findley told Trooper

Eastridge about the series of events that resulted in the car taking off. Sergeant Findley relayed that a black male had been driving the now abandoned Ford. *Id.* Sergeant Findley showed Trooper Eastridge the small bag with marijuana and a pharmaceutical tablet that the driver had produced, after being confronted about the car's smell of marijuana. *Id.* Sergeant Findley confirmed that the person pictured in the West Virginia identification card had been behind the wheel of the black Ford Focus at the DUI checkpoint, and had handed Sergeant Findley the small bag. *Id.* Indeed, Sergeant Findley told Trooper Eastridge that Sergeant Findley had spoken with the individual shown in the West Virginia identification card, and that he was the only occupant of the vehicle. *Id.*

Trooper Eastridge requested a criminal history record for the individual identified by the documents in the car. *Id.* The criminal history for Mr. Hodges reflected two convictions. Trooper Eastridge believed one was for possession with intent to deliver cocaine base, and one for felonious wanton endangerment with a firearm. *Id.*

On September 6, 2016, five days after the encounter with the late 2000's Ford Focus, Trooper Eastridge swore to the above information as part of a warrant application to search Defendant's residence. *Id.* The application reflects that Trooper Eastridge sought evidence "associated with the possession of a firearm by a prohibited person, to include; firearms, ammunition, gun cases, ammunition cases, etc." *Id.* at 2. Additionally, Trooper Eastridge believed he would likely find evidence of "the sale, manufacturing, possessing, [or] distribution of a controlled substance to include; controlled substance, and drug sale paraphernalia such as scales, baggies, and other packaging materials." *Id.* Trooper Eastridge believed he would find this evidence at the "[l]isted address" in Hurricane, West Virginia. *Id.*

Later, Trooper Eastridge and other officers carried out the search warrant at the family residence of Defendant. *Gov.'s Resp.*, at 2; *Def.'s Supp. Br.*, at 8; *Def.'s Mot. to Suppress*, at 2. During the search of the residence, WVSP officers did not find evidence consistent with the items found in the Ford five days earlier. *Def.'s Supp. Br.*, at 6. Officers found neither evidence reflecting ownership of the .45 caliber gun discovered near the Ford, nor evidence with any connection to drug manufacture, possession, or distribution. *Id.* However, in a multi-occupant bedroom, officers did locate a different gun, a single bullet of a different caliber, and a manual for a gun. *Id.* at 6-7.

Defendant requests that this Court suppress the items found as a result of the search warrant execution. Defendant raises several legitimate concerns in his Motion to Suppress. Officers delayed the warrant application for an unknown purpose or reason. And the affidavit for the warrant application did have factual inaccuracies. However, despite these issues, the relevant Fourth Amendment law compels the Court's conclusion. The fruits of the September 6, 2016 search will not be tossed aside. The warrant application provided sufficient information for the magistrate to find probable cause, authorizing the search.

**II. DISCUSSION**

As an essential constitutional protection, the Fourth Amendment ensures "the right of the people to be secure in their persons [and] houses . . . ." U.S. Const. amend. IV; *see also United States v. Hodge*, 354 F.3d 305, 309 (4th Cir. 2004). The warrant requirements described in the Constitution animate this right, providing practical steps to protect the aspirational notion. "[N]o Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Requiring further procedural safeguards, an independent judicial officer must agree with the probable cause determination, and issue the warrant, before it may be executed. *See Hodge*, 354

F.3d at 309 (providing the requirement that an independent judicial officer must issue the warrant before officers can conduct the search). Additionally, courts have created the exclusionary rule to deter the degradation of the quintessential guarantee of security. *See United States. v. Doyle*, 650 F.3d 460, 466 (4th Cir. 2011) (quoting *United States v. Calandra*, 414 U.S. 338, 348 (1974)). The exclusionary rule renders inadmissible the fruits of impermissible searches. *Id.*

However, when officers heed the requirements of the warrant application process, the fruits harvested from the search will not be suppressed. The oath or affirmation must, on its face, "provide the magistrate with a substantial basis for determining the existence of probable cause." *Illinois v. Gates*, 462 U.S. 213, 236 (1983); *see also United States v. Wilhelm*, 80 F.3d 116, 118 (4th Cir. 1996) ("[A] reviewing court must consider only the information presented to the magistrate who issued the warrant."). These affidavits should not be read in a hypertechnical and legalistic fashion. *Id.* at 235-36. Instead, magistrates and courts should read affidavits in the commonsense manner in which the typically lay authors have composed them. *Id.* at 235-36, 238. Likewise, a reviewing court must show "great deference" to the probable cause determination of a magistrate, and avoid an "after-the-fact" *de novo* review. *See Hodge*, 354 F.3d at 309; *Gates*, 462 U.S. at 236.

Although probable cause eludes an exacting definition, it "exit[s] where the known facts and circumstances are sufficient to warrant a [person] of reasonable prudence in the belief that contraband or evidence of a crime will be found" in the location identified to be searched. *United States v. Richardson*, 607 F.3d 357, 369 (4th Cir. 2010) (internal quotation marks omitted) (quoting *Ornelas v. United States*, 517 U.S. 690, 696 (1996)). Implied within this conclusion, a magistrate must believe there exists "a nexus . . . between the suspected criminal activity and the place to be searched." *United States v. Roach*, 582 F.3d 1192, 1200 (10th Cir. 2009) (internal quotation marks

omitted) (quoting *United States v. Gonzales*, 399 F.3d 1225, 1228 (10th Cir. 2005)). Given the totality of the circumstances, if a magistrate determines that "there is a fair probability that contraband or evidence of a crime will be found in a particular place," then the probable cause requirement has been met. *Gates*, 462 U.S. at 238.

Defendant moves this Court to exclude the evidence found in the residence on September 6, 2016 based upon two basic grounds: (1) the five day gap between the events recited in the affidavit and the warrant application render the information stale; and (2) the affidavit contained factual errors and omissions. *See generally Def.'s Supp. Br.* Both of these contentions boil down to the same basic argument: the information in the affidavit could not have provided the magistrate with a substantial basis for finding probable cause. Unfortunately, for Defendant, his argument bares no fruit.

Without doubt, the delay between the occurrence of events giving probable cause and the application for a warrant upon those facts can render the information stale. *See Roach*, 582 F.3d at 1202 (concluding that a year and a half old information did not set forth a sufficient basis for finding probable cause). This staleness has the effect of negating any basis of probable cause that the information may have provided at an earlier time. *Id.* Thus, the government cannot seek to establish defendant's guilt based upon "evidence seized pursuant to a warrant supported by 'stale' probable cause." *United States v. McCall*, 740 F.2d 1331, 1336 (4th Cir. 1984). But a staleness inspection does not entail the mere counting of days. *Id.* (citation omitted). A formulaic calculation of the time between when the facts occurred and the date of a warrant application would be arbitrary. Instead, a court must inspect "all the facts and circumstances of the case, including the nature of the unlawful activity alleged, the length of the activity, and the nature of the property to be seized." *Id.*

Viewed in totality, the five-day delay does not render stale the basis for probable cause contained within the affidavit. Trooper Eastridge noted that the facts underlying the affidavit took place on the night of September 1, 2016. *Ex A. to Def.'s Mot. to Suppress*, at 4. He reported that although he had pursued the fleeing driver, by the time he caught up with the Ford, the driver had left the scene and could not be located. *Id.* Although absent in body, the documents contained within the abandoned vehicle, coupled with Sergeant Findley's recognition of the driver from their interaction, confirmed the errant driver's identity as Mr. Hodges, the defendant. With the name of the driver nearly certain, Trooper Eastridge linked Defendant with the gun found near the car and the evidence consistent with drug possession and distribution found in the car. *Id.* Further, the affidavit reflects that the driver was still on the lam. Having derived the address of the driver from the documents located inside the Ford, Trooper Eastridge believed he would find evidence supporting firearm possession, as well as drug possession or distribution, at that location. The magistrate agreed.

The magistrate permissibly found probable cause, thereby concurring with Trooper Eastridge's conclusion. Given the nature of both suspected drug possession/distribution and firearm possession, Fourth Amendment jurisprudence permitted the magistrate's finding. The Fourth Circuit has expressly provided that magistrates can reasonably believe that evidence of firearm possession will be found in a suspect's house. *United States v. Anderson*, 851 F.3d 727, 729 (4th Cir. 1988) ("It was reasonable for the magistrate to believe that the defendant's gun and the silencer would be found in his residence."); *see also United States v. Crowffey*, 182 Fed.Appx. 249, 250 (4th Cir. May 26, 2006) (per curiam) (citing *Anderson* and finding that it was reasonable for the magistrate to assume that a firearm remained in the suspect's home).[1] The magistrate can

---

[1] The Court notes that *United States v. Crowffey* is an unreported, per curiam opinion of

permissibly reach this finding, even if "the affidavit contain[s] no facts that the weapons were located in defendant's [home]." *Id.*

Further, the five-day delay did not prevent the magistrate's determination. The magistrate permissibly concluded that evidence of firearm possession was reasonably likely to be found in Defendant's home. The commonsense supposition that Defendant's residence would contain evidence of firearm possession, coupled with his flight from the scene where officers found a loaded firearm, permits the magistrate's finding of probable cause. *See Hope v. Cartledge*, 857 F.3d 518, 526 (4th Cir. 2017) ("Flight from prosecution is evidence of guilt.") (citation omitted). Even in the face of a 54 day delay, the Fourth Circuit has upheld a search of a residence for evidence related to firearm possession. *See Crowffey*, 182 Fed.Appx. at 250 (affirming denial of motion to suppress when there were 54 days between the events giving rise to the probable cause and the warrant application). In this case, officers waited only five days. And given that Defendant had fled the scene, allegedly leaving behind his loaded firearm, there existed a "fair probability" that law enforcement would find other evidence of firearm possession. *See Gates*, 462 U.S. at 238. Simply put, and often repeated, people who possess firearms tend to keep evidence of that possession in their homes, and tend to retain that evidence for a long time. *See United States v. Neal*, 528 F.3d 1069, 1074 (8th Cir. 2008) ("Information that someone is suspected of possessing firearms illegally is not stale, even several months later, because individuals who possess firearms tend to keep them for long periods of time."); *United States v. Singer*, 943 F.2d 758, 763 (7th Cir. 1991) (finding that a six month delay did not render information stale because "firearms . . . are durable goods useful to their owners for long periods of time"); *United States v. Goodwin*, 552

---

the Fourth Circuit. Although citation to unpublished opinions is generally disfavored, *see* 4th Cir. R. 32.1 (citation of unpublished opinions), the Court finds the reasoning and findings in *Crowffey* persuasive.

Fed.Appx. 541, 544-46 (6th Cir. Jan. 21, 2014) (finding staleness did not invalidate probable cause where there was five-month delay in applying for a search warrant of a home in search of a machine gun).

Because of the nature of firearm possession, Defendant's flight, and the circumstances connecting the abandoned car to Defendant's residence, the five days does not make the probable cause stale. *C.f. United States v. Farmer*, 370 F.3d 435, 439-40 (4th Cir. 2004) (finding that because of the nature of the property at issue, and that it was usually retained, defendant's staleness argument failed).

Similarly, a commonsense reading of the circumstances recited in the affidavit permitted the magistrate to find probable cause to search for drug evidence. Courts have found that evidence of drug trafficking may remain in a location for weeks or months at a time. *See United States v. Zayas-Diaz*, 95 F.3d 105, 116 (1st Cir. 1996) (citing cases finding that probable cause for drug trafficking may continue for weeks or months from the last reported information); *see also Roach*, 582 F.3d at 1202 (citing *Zayas-Diaz* and parenthetically describing the court's conclusion). Trooper Eastridge's affidavit reflected not only that Defendant had handed over an amount of drugs and proceeded to flee the scene, but also that the abandoned vehicle contained further evidence consistent with drug possession and distribution.[2] *Ex. A. to Def.'s Mot. to Suppress*, at 4. Additionally, Trooper Eastridge noted that Defendant's criminal history reflected a previous

---

[2] Defendant also argues in his briefing that the drug evidence gathered on September 1, 2016, suggests only possession for personal use and not an intent to distribute. *Def.'s Suppl. Br.*, 4. Although he may be correct, the Court finds that scales and baggies can constitute evidence of intent to distribute as well. *United States v. Dewees*, 108 Fed.Appx. 934, 935 (5th Cir. Sept. 13, 2004) (per curiam) (providing that plastic bags and scales constitute additional evidence of an intent to distribute charge). Therefore, the Court finds that the magistrate could properly consider this evidence as indicating either, or both, possession for personal use and possession with intent to distribute.

conviction for a drug crime.³ *Id.* Based upon the facts contained within the affidavit, and courts' recognition that drug evidence may be retained for weeks, the Court finds that the magistrate permissiblly found probable cause for the search. Furthermore, the Court finds that the five-day delay failed to stale the probable cause.

Turning from his failed staleness argument, Defendant also takes issue with the veracity of some of the assertions made, and assumption drawn, in the affidavit. Defendant claims the combination of potentially exculpatory omissions with the simply incorrect information contained within the affidavit render it defective. *Def.'s Mot. to Suppress*, at 2; *Def.'s Suppl. Br.*, at 1-2, 4-5, 8-9. As such, Defendant argues that a truly independent judicial officer would be incapable of finding probable cause from the defective affidavit. *Id.* Because the inaccuracies and omissions were, at the very least, unnecessary to find probable cause, Defendant's argument fails. *United States v. Colkley*, 899 F.2d 297, 301 (4th Cir. 1990) (clarifying that an error or omission "must be necessary to the finding of probable cause" and not just possibly affecting the outcome (internal quotation marks omitted)) (quoting *Franks v. Delaware*, 438 U.S. 154, 156 (1978)).

First, Defendant contends that Trooper Eastridge incorrectly reported in the affidavit that Defendant had a felony conviction for possession with intent to deliver cocaine base from November of 2012. *See Def.'s Suppl. Br.*, 1-2, 4-5. According to Defendant this information is baldly false. Instead, Defendant informs the Court that, in reality, Defendant has a "2012 conviction for simple possession of cocaine – which is not a drug trafficking offense." *Id.* at 2. Defendant argues that this discrepancy between the information contained within the affidavit and

---

³ Defendant takes issue with the characterization of the drug conviction relayed in the affidavit. As the Court explains in the following paragraphs, the magistrate would have been justified in finding probable cause even without the erroneous information about the drug conviction.

the reality of Defendant's criminal history requires the invalidation of the search warrant. Defendant's argument errs in multiple respects.

Regardless of whether the affidavit reflected a drug conviction for possession with intent to deliver, or just a drug conviction for possession, Defendant's criminal history further supported the finding of probable cause. Either of these convictions indicate a history of drug offenses. Given the drugs relinquished by Defendant and the paraphernalia found in the vehicle formerly occupied and controlled by Defendant, a history of drug convictions indicates an increased likelihood that officers would find evidence of illicit drug activity. *C.f. Crowffey*, 182 Fed.Appx. at 250 (concluding that the finding of probable cause was reasonable given, in part, the defendant's "extensive criminal history").

Additionally, Trooper Eastridge did not confine the search to evidence related to "drug trafficking" as Defendant suggests. The affidavit reports that Defendant was charged with violating the section of the West Virginia Code prohibiting "possession of a controlled substance." *Ex. A to Def.'s Mot. to Suppress*, at 3. In his statement of the evidence expected to be gleaned from the search, Trooper Eastridge sought "[a]ny and all evidence pertaining to the sale, manufacturing, *possessing*, [or] distribution of controlled substance to include: controlled substances, and drug sale paraphernalia such as scales, baggies, and other packaging materials." *Id.* (emphasis added). Trooper Eastridge requested a search for evidence that indicated either drug possession, drug sale, drug manufacturing, or drug distribution. Trooper Eastridge, although stated in a catch-all manner, believed he would find evidence of drug possession at the very least.[4] The search was not confined solely to evidence of drug trafficking. Therefore, the version of the drug conviction did not matter.

---

[4] *See supra* note 2.

A criminal history reflecting a past dabbling in drug activity a few years prior would have helped to bolster the magistrate's probable cause finding.

Even without any recitation of criminal history, the warrant with regard to the search for drug evidence would have been valid. Defendant had handed over drugs, had fled the scene, leaving evidence consistent with drug possession and distribution, as well as documents reflecting his address, in the deserted vehicle. *Id.* at 4. This information, in conjunction with the nature of drug crimes, could constitute a substantial basis that permits a magistrate to find probable cause. Therefore, this Court cannot say that the erroneous recitation of the criminal conviction was necessary to probable cause finding. *See Franks v. Delware*, 438 U.S. 154, 155-56 (1978) (concluding that where an affiant includes a knowingly false, or reckless, statement the search warrant may only be voided if the false information was necessary to the finding of probable cause).

Defendant also seizes upon Trooper Eastridge's statement that the Ford Focus was registered to Defendant. *Def.'s Suppl. Br.*, at 8; *Ex. A. to Def.'s Mot. to Suppress*, at 4. Defendant claims that Trooper Eastridge and the WVSP knew this information to be false. *Id.* Contrary to the affidavit, the Ford Focus was actually registered in the name of Jerri Hodges, Defendant's mother. *Id.* Defendant suggests that the inaccuracy concerning the vehicle's registration voids any substantial basis for probable cause the affidavit might have otherwise permitted. The Court disagrees; to negate a finding of probable cause upon an ancillary misstatement would make a mountain out of a molehill.

Even assuming its inaccuracy, the statement regarding the vehicle's registration is inconsequential in the probable cause calculous. Officers had identified Mr. Hodges as the driver from the documentation and identification found in the abandoned car. From these documents,

officers also gathered Mr. Hodge's address. Therefore, the affidavit contained other information that provided an adequate connection between the suspect and the location of the search.

Further, the vehicle registration was not the sole support for the belief that it was Defendant who had possessed a firearm and drugs unlawfully. Sergeant Findley had engaged in conversation with Defendant regarding the marijuana smell and Defendant's subsequent production of drugs. *Ex. A. to Def.'s Mot. to Suppress*, at 4. After Defendant fled, Sergeant Findley identified the driver as Malcom Hodges from the West Virginia identification card located within the car. That Sergeant Findley identified the absconded driver provides a substantial basis to link the items found in and around the car with that driver. Given the factual circumstances reflected in the affidavit, the erroneous vehicle registration information simply did not matter.

Finally, Defendant argues that Trooper Eastridge omitted facts that would, in essence, suggest guilt for a different offense but would exculpate Defendant from firearm or drug violations. For example, Defendant claims that Trooper Eastridge omitted the fact that officers found a Mason jar of moonshine in the driver's side floor. *Def.'s Suppl. Br.*, at 5. Defendant contends this explains his flight from the scene. *Id.* Defendant ran because he did not want to get caught with hooch. According to Defendant, this information suggests that Defendant's flight indicated guilt involving the moonshine, and therefore Defendant's flight could not show consciousness of guilt for illegal firearm possession or further drug crimes.

The Court finds Defendant's argument unavailing.[5] As an initial matter, that Defendant fled because he had moonshine does not negate that Defendant had knowledge about a firearm or more drug evidence. These two explanations are not exclusive; officers and the magistrate could

---

[5] On a side note, the Court is confused about why Defendant would have wanted additionally inculpating statements for a different potential offense included in the affidavit.

have reasonably believed that Defendant ran because of the moonshine *and* the firearm and drug evidence. Despite the omission of the found white lightin', the probable cause determination remains unchanged. *See United States v. Cioni*, 649 F.3d 276, 286 (4th Cir. 2011) ("Moreover, even if the additional facts cited by [Defendant] were included in the affidavit[], the probable cause calculus would nonetheless have remained unchanged.").

Therefore, with regard to the evidence of both firearm and drug possession, the affidavit supplied the magistrate with a substantial basis to reach the probable cause finding.

### III. CONCLUSION

As explained above, the magistrate properly found probable cause for the search conducted on September 6, 2016. Defendant correctly points out that the officers delayed in applying for the warrant, and that the affidavit contained certain inaccuracies. However, given the state of the law and the totality of the circumstances before the Court, these issues do not negate a finding of probable cause. The affidavit contained sufficient facts to allow for the substantial basis required. Therefore, Defendant's motion fails.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel and the defendant, the United States Attorney's Office, the United States Probation Office, and the United States Marshals Service.

ENTER: February 16, 2018

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE